MICA INSULATOR CO. v. COMMERCIAL MICA CO.

(Circuit Court, N. D. Illinois, E. D.   October 24, 1907.)

No. 28,284.

1. PATENTS—VALIDITY—EFFECT OF SUBSEQUENT ACTION OF PATENT OFFICE.
   A patent duly issued cannot be made void by subsequent action of the Patent Office; but that power rests with the courts alone.   The patentee's acquiescence in such subsequent action, however, when material, should be considered by the court in ascertaining what rights he acquired by the grant.

2. SAME.
   Where, after the granting of a patent for a process, an application filed by the same applicant at the same time for a patent on the resulting product was rejected by the Patent Office on the ground of lack of patentable novelty, because of more than two years' prior use, and the applicant acquiesced in such rejection, he is bound by the finding, at least as to want of patentable novelty, and his process patent must be construed as limited in accordance with such finding.

3. SAME—INFRINGEMENT—PROCESS FOR MAKING MICA SHEETS.
   The Dyer patent, No. 483,646, for a process of making artificial mica sheets for electrical insulation, *held* not infringed, even if not invalidated by the acquiescence of the patentee in the decision of the Patent Office denying a patent for the product on the ground of lack of patentable novelty.

In Equity.   On final hearing.

Kenyon & Kenyon, Richard Eyre, and Charles A. Brown, for complainant.

William R. Rummler and George E. Gorman, for defendant.

KOHLSAAT, Circuit Judge.   Complainant files this bill to enjoin infringement of patent No. 483,646, granted to Dyer October 4, 1892, for improvements in process of making mica sheets for electrical insulation.   The claims read as follows, viz.:

"1. The method of manufacturing electrical insulating mica sheets, the same consisting in varnishing a large sheet of iron or similar foundation-plate and placing thereon a series of smaller mica scales with their edges overlapping each other, varnishing the layer of scales and applying a second series of smaller sheets with their edges overlapping, continuing in the same manner until a plate of the required thickness is formed, heating the sheet to partially evaporate the solvent of the varnish, rolling the same to remove the excess of the varnish, subjecting the sheet to a heavy pressure, and finally cooling it, as hereinbefore described.

"2. The herein-described method of building up electrical insulating mica sheets, consisting in varnishing a foundation-plate, placing mica scales thereon while the varnish is still wet or soft with their edges overlapping, varnishing the mica sheets, thus forming a second and third, &c., layer of mica in a similar manner until the required thickness of mica sheet is obtained, and chilling the sheet while rigidly held in curved position.

"3. The hereinbefore-described method of manufacturing electrical insulating sheet mica, consisting in cementing together with lapped joints scales of mica of various shapes of given size, varnishing the sheet thus formed, laying a second layer of scales in the same manner as before and repeating these steps until the desired thickness is obtained, and finally cementing to the sheet thus formed a larger sheet upon one or both sides of the sheet which is made of the said small pieces."

At the same time complainant made application for a product patent for the resultant of his process patent. Claims 1 and 2 of this application read as follows, viz.:

"(1) As an article of manufacture, an electrical insulating sheet consisting of scales of mica of a given size, a sheet of mica of larger size, and a cement between the scales and said sheet, for the purpose, as set forth, of holding the same together into a compact, durable and efficient insulating sheet.

"(2) As an article of manufacture, a built up insulating sheet consisting of alternate layers of mica scales with overlapping edges and insulating cement between the overlapped portions, and an outer layer consisting of a series of mica sheets of larger size than the said mica scales, applied and cemented to the same."

It will be seen that claim 2 last quoted is practically a restatement of the elements of the process patent. It seems clear that the product can be reached only by the process of the patent in suit. For instance, it must be heated, rolled, and pressed. In the case of the application for the product patent, interference was declared which resulted in the finding that the product was devoid of patentable novelty because of more than two years' prior use, and that neither party was entitled to a patent. In this decision complainant acquiesced. Defendant insists that, by reason of these facts, the patent in suit was either nullified or made so narrow as not to cover its device. There is little merit in the first point. The solemn act of granting a patent cannot be made void by the subsequent act of the Patent Office. That power rests with the courts alone, and they must deal with the matter entirely independent of the later proceedings before the examiner. The acquiescence of the applicant, however, in the decision of the examiner in a case such as is here presented should be considered by the court in ascertaining what rights the patentee acquired by the grant. He stands of record admitting that the product of his process had been in prior use for more than two years prior to the date of his application. A patent may be granted for a new result, or a new method of obtaining an old result. If complainant has a good patent, it must consist in and be limited to the specific terms of its patent. It is very difficult to discern how the product in suit can be not patentable while yet the process is patentable. Of necessity the respective claims, as well as the specifications, are clothed in practically the same language. The situation presented is embarrassing. It is difficult to understand how the process can be novel, and the product old on the facts of the case. Complainant's counsel take the position that there may have been many reasons why Dyer did not care to appeal; i. e., he might have deemed his process patent sufficient protection, he might have been unable to proceed for financial reasons, his attorney may have been outwitted, and the like. Even though it may be questioned whether Dyer was estopped because of the finding as to prior use, he is certainly bound by the finding as to want of patentable novelty.

Two of the distinguishing features of the process patent in suit over the prior art consist, as complainant claims, in (1) the use of laminated elementary scales of mica; (2) placed together or assembled by overlapping one piece upon another, and securing the same in position by means of some adhesive substance. The evidence seems to justify the complainant's assertion that its product had merit over the prior art, although Dyer, by his acquiescence, must have conceded the contrary.

In such a case the fact that the product became a commercial success can be of no weight.

Judge Gray of the Third Circuit sustained the patent in the case of Complainant v. Union Mica Company et al. (decided in 1905) 137 Fed. 928. He did not, however, have before him the interference record, though he seems to have considered the evidence upon which the examiner acted. That knowledge of Dyer's acquiescence in the matter of the product would have been deemed in the case just cited of serious moment I cannot doubt.

The patent in suit calls for a large sheet of iron or similar foundation plate on which to place the mica scales. Defendant uses oiled paper, but claims any platform or table will suffice. Complainant divides the mica into laminated elementary scales. Defendant's scales are not elementary. These distinctions are very fine; but, unless the product is possessed of patentable novelty, I can see no other features upon which to sustain the patent. They only are not apparent in the product. On the facts of the case, defendant does not infringe.

The bill is dismissed for want of equity.